452 So.2d 850 (1984)
Ezell JOHNSON, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 54963.
Supreme Court of Mississippi.
May 30, 1984.
Rehearing Denied July 25, 1984.
*851 John Robbins, II, Brandon, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and BOWLING and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court.

I.
This case presents the question whether two convictions and sentences resulting from a single trial on a multi-count indictment is an error cognizable under this Court's plain error rule. Ezell Johnson, Jr., Defendant below and Appellant here, was convicted in the Circuit Court of Rankin County on one count of automobile burglary and one count of grand larceny. Johnson was charged with both offenses in a single indictment. After one trial, he was convicted on both counts and sentenced to serve seven years for the burglary conviction and five years for the larceny conviction. The sentences were to be served consecutively.
Indictments charging more than one crime which, in a single trial, result in multiple convictions and sentences have been expressly prohibited by this Court. Finding this to be plain error, we hold that Johnson's conviction for the lesser offense of grand larceny cannot stand. His sentence of five years for this charge must be vacated. In all other respects, the case is affirmed.

II.
We present the facts, as we should, in the light most favorable to the state. Both *852 of the counts charged in Johnson's indictment stem from an auto burglary that occurred on February 21, 1983. Paul Nichols, the victim of this crime, testified that on that morning, he drove to his job at the Winn Dixie Super Market in Pearl, Mississippi at about 6:00 a.m. He parked his truck in the store's parking lot, locked it and raised all of the windows. At that time, his truck contained a Pioneer CD5 equalizer and two Pioneer TS698 speakers. When Nichols returned to his truck at 3:30 that afternoon, the vent window was broken on the passenger side of the vehicle and the larger window beside it was rolled down. Nichols' equalizer and speakers were missing. Later, Nichols realized that a box of his cassette tapes was also missing, and he found a pellet on the floor of his truck. He reported all of these events to the police immediately after they were discovered.
In the course of the investigation that followed, the police officers learned that some time prior to this incident, Johnson and Nichols had made each other's acquaintance at Wendy's Old Fashion Hamburgers in Pearl. In the presence of Nichols' girl-friend, Robin Payne, Johnson and Nichols discussed their respective stereo systems. Both Payne and Nichols testified that the Defendant had said that his stereo system was exactly like Nichols' except that he did not have Nichols' equalizer.
Later, about two or three days before the burglary, some of Nichols' fellow workers at Winn Dixie saw a person resembling the Defendant working on his car in Winn Dixie's parking lot on three different occasions. Evidently, this person aroused their suspicion because they reported the incidence to Nichols. None, however, were positively able to identify the Defendant as the person they had seen.
On the day of the burglary, no one saw Johnson in the parking lot of the Winn Dixie. However, his parole officer testified that she had seen Johnson with a pellet gun earlier in the day.
Three days after the burglary, Nichols saw Johnson's car in the parking lot of Wendy's. He called detective Manning because this car was similar to the one his fellow workers had seen in Winn Dixie's parking lot. Manning went directly to Wendy's and talked to Ezell Johnson. According to Manning, Johnson gave him permission to look at the equalizer and the speakers in Johnson's car. When Manning showed the speakers and the equalizer to Nichols, he positively identified them as his own. He claimed that he recognized the equalizer as his because it had a warped top side. Nichols identified the speakers by two rub marks that were made by his sliding rear view windows, which would rub against the speakers when it was opened or shut. He recognized one of the speakers as his because it had a bent bolt. Nichols also found one of his tapes in Johnson's car.
After the police officers found Johnson in possession of property they believed to be stolen from Nichols, they gave him an opportunity to produce receipts or other evidence which would show that he had acquired the property from someone else. While Johnson attempted to comply with this request, the evidence he produced was grossly inadequate.
Subsequently, Johnson was indicted for auto burglary and grand larceny in a single indictment. The day before the trial, a motion was filed on behalf of the Defendant challenging the form of the indictment. The motion alleged that the state was trying to "stack charges" against the Defendant. This motion was overruled, and on the following day, the state proceeded to try the Defendant on both charges in a single proceeding. After hearing the evidence, the jury returned two verdicts finding Johnson guilty of both automobile burglary and grand larceny. Johnson was sentenced to serve seven years in the Mississippi Department of Corrections on the automobile burglary conviction and five years on the grand larceny conviction. The sentences were to be served consecutively.

III.
When the state elected to indict and try Ezell Johnson on two separate counts in *853 a single proceeding, it violated the rule of law announced in Stinson v. State, 443 So.2d 869 (Miss. 1983). In Stinson, the Defendant was indicted and tried upon three separate offenses all arising out of the same transaction or occurrence. On appeal, the Defendant challenged the state's use of the multi-count indictment. After extensive review of prior case law in this area the Court in Stinson found that multi-count indictments resulting in more than one conviction and sentence were not authorized under Mississippi law. The Court declined to approve multi-count indictments as implemented by the federal court system under Rule 8(a) of the Federal Rules of Criminal Procedure.
The holding in Stinson was reaffirmed in Friday v. State, No. 54,039, decided January 25, 1984, (not yet reported) and Bennett v. State, 451 So.2d 727 (Miss. 1984). In Friday, this Court explained its position as follows:
"Because of the inherent prospect of destroying a Defendant's right to the presumption of innocence, Mississippi does not allow trial on separate charges to be consolidated where evidence of the crime would not be mutually admissible in separate trials and where the Defendant is subject to receiving more than one sentence."
Our opinion in Bennett v. State, supra, is to the same effect. Under the authority enumerated above, the relief to which Johnson would be entitled is reversal of the lesser conviction of larceny and vacation of the sentence for the same.
Even though the proper objection was made at Johnson's trial to preserve this point for appellate review, the multi-count indictment was not assigned as error. The question that remains to be answered, then, is whether this error is of the sort that should be reviewed by this Court under our so-called plain error rule. Rule 6(b) of the Mississippi Supreme Court Rules provides:
"No error not distinctly assigned shall not be argued by counsel, except upon request of the Court, but the Court may, at its option, notice a plain error not assigned or distinctly specified."
Since the applicable rule of law is clear, we find this to be an appropriate case to exercise our power to recognize an error not raised on appeal. See, e.g., House v. State, 445 So.2d 815, 820 (Miss. 1984); Hooten v. State, 427 So.2d 1388 (Miss. 1983); Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965). The primary purpose of the plain error rule is to prevent a manifest miscarriage of justice. Bell v. State, 443 So.2d 16 (Miss. 1983). It has been used by this Court to insure the equal administration of justice, Wright v. State, 231 So.2d 777 (Miss. 1970), an application we regard as appropriate in the case at bar. Consequently, we reverse Johnson's conviction and vacate his sentence for the lesser offense of grand larceny. In all fairness to the trial judge, we might add that at the time of Johnson's trial, the decision in Stinson v. State had not yet been issued.

IV.
Johnson assigns as error his convictions for both crimes, believing them to be against the overwhelming weight of the evidence. When faced with this question, our powers of review are limited. Under our system, the jury is charged with the responsibility for weighing and considering the conflicting evidence and the credibility of the witnesses. Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). As we stated in Pearson v. State, 428 So.2d 1361 (Miss. 1983):
"Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that under the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560, 576 (1979). 428 So.2d at 1364."
When all conflicts in evidence are resolved in the state's favor, certain facts are *854 established. The state proved that a week or so prior to the burglary, Johnson said that he did not have an equalizer like Nichols. On the day of the burglary, Johnson was seen with a pellet gun, and a pellet was found by Nichols on the floor of his truck. There is an inference that the vent window on Nichols' truck was shot out with a pellet gun. Finally, only three days after the burglary, Nichols' property was found in Johnson's possession.
Under the rule announced in Smith v. State, 278 So.2d 408 (Miss. 1973) Johnson's possession of the stolen property was sufficiently close in time to the burglary to give rise to a presumption that the Defendant was guilty of burglary, unless he offered a reasonable explanation for his possession of the stolen property. Here, the Defendant's explanation of his possession of the equalizer was that he had bought it months before the burglary. He produced a receipt to this effect, but the amount on the receipt did not correspond to the amount that Johnson claimed that he paid for his equalizer. Moreover, if we must take as true the fact that the equalizer in Johnson's possession was stolen from Nichols, then Johnson's explanation is implausible. Evidence that Johnson was in possession of a pellet gun on the day that Nichols' truck window was broken out with such a gun tends to corroborate the theory that Johnson perpetrated the auto burglary. This evidence certainly bolsters the state's case when taken in conjunction with the defendant's unexplained possession of the stolen property only three days after the crime was committed.
At the close of Johnson's trial, the jury was instructed that the state's case was circumstantial only and that it could not find the Defendant guilty of either crime unless it believed that the state had proved its case to the exclusion of every reasonable hypothesis of innocence. The verdicts returned by the jury indicate that it believed the state had met this higher burden and we decline to disturb its finding in that regard.

V.
Johnson complains that on cross-examination, the prosecutor was allowed to specify each crime that the Defendant had been convicted of prior to the hearing. It is the rule in this state that any felony may be used to impeach the testimony of a witness. Miss. Code Ann. § 13-1-11 (1972). In Wells v. State, 288 So.2d 860 (Miss. 1974), this Court stated the rule to be followed:
"The proper procedure for the district attorney to have used was simply to ask the appellant of what crimes or misdemeanors he had been convicted since appellant had already responded to his own attorney that he had been convicted of a crime. If he then failed to fully enumerate all of his prior convictions, then the district attorney could properly ask him, by way of refreshing his memory and to lay a predicate for impeachment, if he denied being convicted of a particular crime on a particular date in a particular court, but without going into the details of such crime or the punishment received. 288 So.2d at 64."
See also Sanders v. State, 352 So.2d 822 (Miss. 1977). Here, the district attorney followed the proper procedure for eliciting from Johnson the specifics of his prior convictions. Consequently, we decline to reverse his conviction on this ground.

VI.
The final error raised on this appeal is whether the court erred in refusing to instruct the jury that the Defendant had a right to testify in his own behalf and that his testimony should be treated in the same manner as the testimony of any other witness. By statute, every defendant in Mississippi is competent to testify in his own behalf. Miss. Code Ann. § 13-1-9 (1972). However, in Baker v. State, 391 So.2d 1010 (Miss. 1980), this Court held that defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf. Baker overruled prior case law to the extent *855 that it was contrary to the above mentioned rule.
Having carefully considered the errors that were raised by the Defendant on this appeal, we find that they are without merit. Consequently, Johnson's conviction for auto burglary is affirmed. For the reasons stated above, his conviction for grand larceny is reversed and the sentence therefor is vacated.
AFFIRMED IN PART, REVERSED IN PART, AND SENTENCE OF FIVE (5) YEARS ON CHARGE OF GRAND LARCENY VACATED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.