736 S.E.2d 863

THALIA S., a minor under the age of 14 years, through her next friend and natural mother, Mercedes Aminta GROMACKI, Mercedes Aminta Gromacki, as Personal Representative of the Estate of Angelina G., Mercedes Aminta Gromacki, Individually, and Kristopher Gromacki, Individually, Appellants,

v.

PROGRESSIVE SELECT INSURANCE COMPANY, f/k/a Progressive Auto Pro Insurance Company, Respondent.

Appellate Case No. 2011–195546.

No. 5054.

Court of Appeals of South Carolina.

Heard Oct. 18, 2012.

Decided Nov. 28, 2012.

---

Darrell T. Johnson, Jr., Warren Paul Johnson, and Mills L. Morrison, Jr., all of Law Office of Darrell Thomas Johnson, Jr., LLC, of Hardeeville, for Appellants.

John Robert Murphy, of Murphy & Grantland, PA, of Columbia, for Respondent.

CURETON, A.J.

In this dispute over insurance coverage, Appellants argue the trial court erred in granting summary judgment to Progressive Select Insurance Company (Progressive) because (1) their insurance policy affords bodily injury liability coverage pursuant to section 56–9–351 of the South Carolina Code (2006) and (2) the trial court's reliance on *Newton v. Progressive Northwestern Insurance Company*, 347 S.C. 271, 554 S.E.2d 437 (Ct.App.2001), is misplaced. We affirm.

**FACTS**

The facts of this case are undisputed. On March 22, 2005, Kristopher Gromacki was driving his wife, Mercedes Salas, and children, Thalia and Angelina, from their home in Florida to Virginia. On Interstate 95 in South Carolina, Gromacki lost control of the vehicle, swerved into another lane, and was rear-ended by a tractor trailer operated by Fleet Source, Inc. Gromacki and Thalia were seen by a doctor the day of the accident and were released the same day. However, Salas suffered a brain injury that required emergency surgery, and Angelina passed away a few days after the accident.

Thalia and Salas sued Fleet Source, Gromacki, and the corporation that manufactured Angelina's child seat and ultimately settled with the two corporate defendants. The claims against Gromacki were referred to a special referee, who awarded damages to Thalia and Salas. Thereafter, Appellants filed a declaratory judgment action against Progressive, which is the basis for this appeal. In the complaint, Appellants alleged Progressive breached the policy of insurance by refus-

ing to pay the limits of liability coverage under the policy. Appellants argued the policy should be enforced to include bodily injury liability coverage because the policy's out-of-state coverage provision requires coverage for accidents that occur in South Carolina.

Progressive served Appellants with a request for admission. Appellants admitted the policy was issued to Salas, a resident of Florida and the named insured under the policy. They further admitted the policy was neither issued nor delivered in South Carolina; the vehicle involved in the accident was principally garaged in Florida, not South Carolina; and on the date of the accident, Appellants were not residents of South Carolina. Appellants acknowledged the policy did not include any bodily injury liability coverage for accidents occurring in Florida. Moreover, they admitted Progressive did not certify proof of financial responsibility pursuant to South Carolina law on behalf of Appellants and Gromacki and Salas were not required to certify proof of financial responsibility prior to the accident. Appellants confirmed Gromacki and Salas had not been involved in a prior accident in South Carolina before the accident relating to this dispute, nor had their driving privileges in South Carolina been suspended at the time of the accident. Finally, Appellants admitted they had no evidence either Gromacki or Salas had failed to satisfy a judgment relating to another motor vehicle accident prior to the accident.

Both sides moved for summary judgment. After a hearing, the trial court held the out-of-state coverage provision in the policy was not triggered and granted summary judgment to Progressive. Appellants filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, which the trial court denied. This appeal followed.

## LAW/ANALYSIS

### I. Procedural Posture

When reviewing the grant of a summary judgment motion, an appellate court "applies the same standard that governs the trial court under Rule 56(c), SCRCP." *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 415, 633 S.E.2d 136, 138 (2006).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 134, 659 S.E.2d 496, 498 (2008). In determining whether any triable issues of fact exist, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).

■ "The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment." *Hansen ex rel. Hansen v. United Servs. Auto. Ass'n*, 350 S.C. 62, 67, 565 S.E.2d 114, 116 (Ct.App.2002) (quoting *Middleborough Horizontal Prop. Regime Council of Co–Owners v. Montedison S.p.A.*, 320 S.C. 470, 477, 465 S.E.2d 765, 770 (Ct.App.1995)).

## II. Analysis

First, Appellants argue their insurance policy must afford bodily injury liability coverage because section 56–9–351 of the South Carolina Code (2006) requires nonresident motorists to maintain bodily injury liability coverage while driving in South Carolina. We disagree.

■ "An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law."[1] *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008); *accord Barnier v. Rainey*, 890 So.2d 357, 359 (Fla. Dist.Ct.App.2004) ("In that the rights and obligations of parties under a policy of insurance arise out of a contract of insurance, they are governed by contract law."). "Where the

---

1. We are cognizant that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State and ... are subject to the laws of this State." S.C.Code Ann. § 38–61–10 (2002). However, in construing a contract made between residents of another state, executed and delivered in the other state, and concerning lives or property usually located in the other state, South Carolina courts will look to the law of the state where the contract was issued. *Gordon v. Colonial Ins. Co. of Cal.*, 342 S.C. 152, 155–56, 536 S.E.2d 376, 378 (Ct.App.2000). The question of which state's laws apply to Appellants' contract is not at issue in this appeal. Both Florida and South Carolina adhere to the same applicable principles; therefore, we provide citations to the law of both states.

terms of a contract are clear and unambiguous, its construction is for the court; but where the terms are ambiguous, the question of the parties' intent must be submitted to the jury." *Hansen*, 350 S.C. at 68, 565 S.E.2d at 116; *accord Ellenwood v. S. United Life Ins. Co.*, 373 So.2d 392, 394 (Fla.Dist.Ct.App. 1979) ("If the language of a contract is unambiguous and not subject to conflicting inferences, its construction is for the court, not the jury."). Furthermore, "[w]hen a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 468, 636 S.E.2d 598, 606 (2006).

█ Appellants base their argument upon language contained in the second paragraph of the out-of-state provision in the policy:

If an accident to which this Part 1 applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada other than the one in which a covered vehicle is principally garaged, and the state, province, territory or possession has:

. . .

2. *A compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the nonresident uses a vehicle in that state,* province, territory or possession, this policy will provide the greater of:

a. the required minimum amounts and types of coverage; or

b. the limits of Liability under this policy.

(emphasis added). According to Appellants, section 56–9–351 qualifies as a "similar law" for the purposes of Paragraph 2. That statute, entitled "Deposit of security by owner following accident; suspension of license and registration and notice thereof," provides:

Within sixty days of receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in the amount of two hundred dollars or more, the Department of Motor Vehicles shall suspend the license of each operator or driver if he is the owner of the motor vehicle involved in the accident and all registrations of each owner of a motor

vehicle involved in the accident. If the operator or driver is a nonresident, the privilege of operating a motor vehicle within this State and the privilege of the use within this State of a motor vehicle owned by him is suspended unless the operator, driver or owner, or both, deposits security in a sum not less than two hundred dollars or an additional amount as the department may specify that will be sufficient to satisfy a judgment that may be recovered for damages resulting from the accident which may be recovered against the operator or owner. Notice of the suspension must be sent by the department to the operator and owner at least ten days before the effective date of the suspension and shall state the amount required as security.

The plain language of this statute does not mandate that nonresident motorists maintain bodily injury liability coverage while driving in South Carolina. Section 56–9–351 does not operate against a nonresident motorist unless and until he causes "a motor vehicle accident within this State which ... result[s] in bodily injury or death or damage to the property of any one person in the amount of two hundred dollars or more." After such an accident, the law requires either the suspension of the motorist's privilege to operate a motor vehicle in South Carolina or a deposit of funds sufficient to pay the damages resulting from the accident. We find these requirements are designed to protect the interests of the victims and prevent further accidents, not to punish the nonresident motorist.[2] Moreover, because these requirements do not apply to a nonresident motorist who has not caused an accident resulting in bodily injury, death, or property damage in excess of two hundred dollars, we find section 56–9–351 does not mandate that nonresident motorists maintain bodily injury liability coverage while driving in this state.

In view of these findings, we conclude section 56–9–351 is not a "compulsory insurance or similar law" under Paragraph 2 of the out-of-state coverage provision in Appellants' insurance policy. Consequently, the trial court did not err in

---

**2.** As this court previously observed, the purpose of section 56–9–351 is to "compel the creation of a fund from which one might satisfy a judgment obtained against an operator or owner for damages resulting from a motor vehicle accident involving the operator's or owner's motor vehicle." *Newton v. Progressive Northwestern Ins. Co.,* 347 S.C. 271, 275, 554 S.E.2d 437, 439 (Ct.App.2001).

determining Progressive was entitled to judgment as a matter of law.

Second, Appellants argue the trial court erred in relying on *Newton* because section 56–9–351 expressly requires nonresident motorists to carry bodily injury liability coverage. In view of our determination that section 56–9–351 does not impose such a requirement, we need not reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

With regard to whether section 56–9–351 triggered the out-of-state coverage provision in Appellant's insurance policy, we find section 56–9–351 does not operate as a "compulsory insurance or similar law." Therefore, we find the out-of-state coverage provision was not triggered, and the trial court did not err in determining Progressive was entitled to judgment as a matter of law.

Because our decision concerning Appellants' first issue is dispositive of this appeal, we do not reach Appellants' remaining issue. Accordingly, the decision of the trial court is

**AFFIRMED.**

FEW, C.J., and WILLIAMS, J., concur.